The motion was very fully argued, by counsel on both sides, when nearly the same grounds were taken that had been urged on the trial; after which, the judgment of the. court was delivered by Mr. Justice W aties, as follows %
That the great object of the limitation act which was passed so long ago as the year 1712, and which had remained in force to the present day, with scarcely a single alteration, was to quiet the inhabitants of this state, in the peaceable and quiet enjoyment of their estates, both real and personal. This was deemed by our ancestors, a matter of primary consideration, tending to give security and permanency to property of all kinds j and to prevent as much as possible, every species of litigation so injurious to society, and especially in a young country, just then emerging from the difficulties attending the first settlement of it. The second and third clauses of the act, were intended to secure actual settlers in the possession of their lands, and hundreds of suits have been determined in this country, in favour of possessory rights alone, against the clearest titles by grants and deeds, &c.
The fifth and sixth clauses of the act, were intended to give the like security to personal property of every kind, in the actual possession of our citizens, in the same manner as was afforded to the possessors of landed property. Five years' possession completed the title to lands, and four years’ *161 possession die tide to all kinds of chattels, as no suit can be maintained ioi either, without being commenced within the above periods. '
Whatever advantages the common law meant to give to judgments, executions, and the levies of sheriff-, they are all circumscribed by the limits prescribed by this act, as to bona fde purchasers and possessors. But no common law right is affected by it, if pursued within the above periods, which the policy of the law considers as a reasonable time to pursue those rights ; leges vigilantibus non dormientibus subveniunt; and if men will sleep upon their rights, it is their own faults ; they have themselves to blame, and must take the consequences.
There can be no doubt, but the sheriff might have levied on the negroes when the first execution was lodged; and if he had done so, he might have pursued his action of trover or trespass, against any person into whose hands they might come, at any time within four years after the day of the levy ; but as he did not do either within that time, his right under that execution was gone. Upon the renewal of the judgment, eleven years after, and the lodging of the second execution in the sheriff’s office, the present sheriff might still have levied on the negroes, -v.-y h.od remained in the possession of Ellis, the defendant in the action, • - would have run against the judgment or execution, as against him ; the property would still have been bound by the renewal of the execution. But the property of the ne-groes in question, was not in him when the second execution was renewed ; that had been transferred to the plain tiff Cholett, and he had enjoyed the peaceable possession of them more than four years after the time of their delivery : his title, therefore, was complete at the end of that period, since which time he has had the peaceable enjoys jnent of them six years more, before the sheriff took possession of them»
*162 It is clear, therefore, that the sheriff was not justifiable in seizing them, and taking them off, under this second ex> ecution. irle is undoubtedly a trespasser.
Rule for a new trial discharged.
Present, Burke, Grimke, Waties and Bay,